CC-2002-046          - 1 -

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Verónica Baba Rosario y Wanda Rosario Dávila | Certiorari |
| Demandantes-Recurridos | 2002 TSPR 99 |
| v. | 157 DPR \_\_\_\_ |
| Roberto González Fernández y otros | |
| Demandados-Peticionarios | |

Número del Caso: CC-2002-46

Fecha: 28/junio/2002

Tribunal de Circuito de Apelaciones:
                    Circuito Regional II

Juez Ponente:

            Hon. Héctor Urgell Cuebas

Abogado de la Parte Peticionaria:
                    Lcdo. Roberto Llavina Calero

Abogado de la Parte Recurrida:
                    Lcdo. Eric Pagani Padró

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Verónica Baba Rosario y
Wanda Rosario Dávila**

    **Demandantes- Recurridos**

          **v.**

**Roberto González Fernández
y otros**

    **Demandados- Peticionarios**

**CC-2002-046    Certior**

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 28 de junio de 2002.

El presente recurso nos brinda la oportunidad de aplicar, por primera vez, la normativa establecida en <u>López v. Porrata Doria</u>, res. el 4 de abril de 2002, 2002 TSPR 39, relativa a la responsabilidad paterna por los daños causados por los hijos menores de edad. En el caso de autos la controversia es si un padre que no convive con su hija (a raíz del divorcio decretado entre ambos padres) responde a tenor con el Artículo 1803 del Código Civil[1] por los alegados daños que la menor ocasionó mientras se encontraba en la residencia de su madre, en cuya compañía vivía.

---

[1] 31 L.P.R.A. sec. 5142.

I

Las señoras Verónica Baba Rosario y Wanda Rosario Dávila (en adelante, las demandantes) interpusieron demanda en daños y perjuicios contra los padres de Hilda González Cruz, menor de edad, alegando que, a tenor con el Artículo 1803 del Código Civil, éstos eran responsables vicariamente por los daños que su hija ocasionó cuando agredió a una de las demandantes. Específicamente, en la demanda se adujo que Hilda González Cruz agredió a Verónica Baba Rosario, mutilándole el rostro, mientras ésta última se encontraba como invitada en la residencia de la Sra. Vivian Cruz Sánchez, madre de la referida menor.

Al momento de los hechos la menor vivía en compañía de su madre, la Sra. Cruz Sánchez, quien tenía su custodia ya que ésta y el padre de la menor, Roberto González Fernández, estaban divorciados. Sin embargo, la patria potestad era compartida por ambos padres.

Oportunamente el señor González Fernández solicitó la desestimación de la demanda interpuesta en su contra. Alegó que a tenor con el Artículo 1803 no era responsable de los daños causados por su hija ya que ésta no vivía en su compañía. Tras examinar la referida solicitud, el Tribunal de Primera Instancia dictó sentencia sumaria parcial y desestimó la demanda presentada en contra del padre.

En síntesis, el aludido foro estimó que la responsabilidad que establece el Artículo 1803 es por los actos de los menores que viven en compañía de los padres. Por ello, y en vista que la menor no vivía en compañía del referido progenitor, sino en compañía de la madre, el tribunal de instancia desestimó la demanda incoada en su contra. Más aún, el foro sentenciador determinó que los hechos que originaron la presente reclamación ocurrieron en la residencia de la madre de la menor, en donde el padre, señor González Fernández, no tiene injerencia alguna sobre las normas de conducta imperantes.

Inconformes, las demandantes acudieron al Tribunal de Circuito de Apelaciones aduciendo que erró el foro de instancia al desestimar la demanda radicada en contra del padre. Por su parte, el tribunal apelativo revocó el dictamen del foro de instancia tras concluir que el Artículo 1803 era aplicable en vista que el señor González Fernández ostenta la patria potestad sobre la menor.

De este dictamen recurre el señor González Fernández ante nos y arguye que procede revocar la sentencia del foro apelativo pues, según estima, la responsabilidad vicaria de los padres, establecida por el Artículo 1803, se encuentra limitada a los actos de los hijos que vivan en su compañía. A raíz de esto, argumenta que no se le debe imponer responsabilidad a tenor con dicho artículo pues no vivía en compañía de la menor al momento de ocurrir el acto dañoso.

Igualmente, indica que el mero hecho que las demandantes, o el foro apelativo, no coincidan con el lenguaje claro del referido artículo no implica que lo procedente es que un tribunal lo "enmiende", en tanto constitucionalmente esa tarea es propia del legislador. Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

## II

**En <u>López v. Porrata Doria</u>, *supra*, tuvimos oportunidad de expresarnos sobre el ámbito de responsabilidad de los padres, por los actos de sus hijos, cuando estos se encuentran separados por sentencia de divorcio. Así, al interpretar aquella disposición del Artículo 1803 del Código Civil que dispone "[los padres] son responsables de los perjuicios causados por los hijos menores de edad <u>que viven en su compañía</u>"[2], señalamos que en dichos casos responderá el progenitor con el que <u>convive</u> el menor, a menos que demuestre que**

**empleó toda la diligencia de un buen padre de familia para prevenir el daño. De esta forma, concluimos que la "convivencia" era un requisito para la imposición de responsabilidad paterna.**

En el citado caso explicamos en detalle la razón de ser del Artículo 1803. De esta manera, advertimos que el referido precepto <u>no</u> establece un régimen de responsabilidad absoluta, bajo el cual se responda por el mero hecho de ser padre, sino que el mismo encuentra su fundamento en la culpa *in vigilando*. Precisamente, el Artículo 1803 presume que los padres que conviven con sus hijos son responsables de los daños que estos producen porque teniendo las condiciones necesarias para vigilarlos (en tanto conviven con ellos) aun así se causa un daño. En otras palabras, se presume que si se produce un daño, pudiendo vigilar al menor, es porque hubo negligencia en tal vigilancia. Por su puesto, esta presunción de culpa *in vigilando* puede ser <u>rebatida</u> con prueba en contrario.

Es esta la explicación que guió nuestra discusión en <u>López v. Porrata Doria</u>, *supra*; y es precisamente ésta la que sustenta nuestro razonamiento: a tenor con el Artículo 1803, la convivencia es indispensable para la imposición de responsabilidad paterna (la cual está basada en la culpa *in vigilando*) pues el padre que no viva con su hijo no lo puede vigilar. Por ello, señalamos: "[e]n la medida que el fundamento de la responsabilidad sea la culpa *in vigilando* de los propios padres, lógico será, como requisito para fijar responsabilidad, establecer la posibilidad de ejercitar este deber exigiendo la convivencia entre padres e hijos". <u>López v. Porrata Doria</u>, *supra.*

---

[2] Énfasis suplido.

Al así resolver, no sólo seguimos el claro lenguaje del Artículo 1803, sino que enunciamos una norma consistente con nuestro ordenamiento <u>vigente</u>. Ciertamente, los casos de padres divorciados plantean complicaciones adicionales en el ámbito de la responsabilidad paterna. Sin embargo, no por ello debemos descartar, sin más, toda una normativa bien asentada en nuestro sistema civilista. La razón de ser del Artículo 1803 tiene <u>igual</u> validez y aplicabilidad tanto en casos de padres divorciados como en situaciones familiares "tradicionales". En ambos casos el fundamento de la responsabilidad impuesta por el Artículo 1803 es la culpa *in vigilando* y bajo ésta la "convivencia" es un presupuesto de responsabilidad, pues el padre que no viva con su hijo no lo puede guardar. Es este el sistema de responsabilidad que ha fijado el legislador y es a éste a quién le compete ponderar si un sistema de responsabilidad absoluta, en el que se responda por el mero hecho de ser padre, es el que debe prevalecer.

La norma de <u>López v. Porrata Doria</u>, *supra*, <u>no</u> pretende validar la conducta de padres irresponsables ni imponer una carga sobre aquellos padres esmerados. En primer lugar, un padre esmerado y responsable podrá fácilmente librarse de responsabilidad si demuestre que, en efecto, actuó como un buen padre de familia para prevenir el daño. De otra parte, para aquellos casos de padres incumplidores e irresponsables nuestro ordenamiento provee las sanciones pertinentes.[3] La solución no puede ser descartar, de plano, la normativa que emana del Artículo 1803; sobre todo cuando el propio

---

[3] Véase, por ejemplo, los Artículos 158 y 159 del Código Penal, 33 L.P.R.A. secs. 4241 y 4242, sobre incumplimiento de la obligación alimenticia y abandono de menores, respectivamente.

sistema provee procedimientos para atender estos casos y cuando la Constitución no exige tal proceder.

López v. Porrata Doria, *supra*, sí pretende anunciar una norma a la luz del derecho aplicable y a tenor con el principio de hermenéutica de que en ausencia de una infracción constitucional, un tribunal no debe invalidar un estatuto por el mero hecho de que discrepe del juicio valorativo de las esferas representativas de nuestra sociedad o porque estime que, a su juicio, el bien común sería mejor atendido si se descarta el mandato legislativo.

De hecho, la normativa que sirve de guía en López v. Porrata Doria, *supra*, no es nueva. La misma es cónsona con nuestra jurisprudencia interpretativa, la cual ha precisado que la convivencia es un presupuesto de responsabilidad a tenor con el Artículo 1803 al punto de eximir de responsabilidad a aquellos padres que no convivían con sus hijos.[4] En López v. Porrata Doria, *supra*, meramente aplicamos una norma bien asentada a una realidad de la vida social moderna, no sin antes estudiar a fondo las implicaciones y la razón de ser de ésta. Así, incorporamos lo que se conoce como la "teoría del traspaso de responsabilidad", la cual sostiene que la responsabilidad se traspasa con el menor y responde el padre que lo tenga en el momento de la comisión del acto culposo. Por ello, explicamos que el Artículo 1803 responsabiliza al padre que tenga al menor en su compañía en el momento que se produzca el daño, pues sólo éste es quien posee las condiciones para vigilar al hijo.

Aunque la norma elaborada en López v. Porrata Doria, *supra*, tiene la ventaja de ser sumamente sencilla, en dicho caso advertimos

---

[4] Véase, por ejemplo, Rodríguez v. Santos, 40 D.P.R. 48 (1929) y; Pacheco v. Pomales, 55 D.P.R. 341 (1939).

que habrá que atender las <u>circunstancias de hecho</u> de cada caso para determinar con cuál padre convivía el menor. Por ello, la norma enunciada <u>no</u> se reduce a responsabilizar automáticamente a aquel padre que tenga la custodia a tenor con un decreto judicial.

De esta forma, para determinar con cuál padre convivía un menor, al ocurrir el daño, será necesario atender las circunstancias de hecho de cada caso. La "convivencia" no se deriva mecánicamente de lo dispuesto en un decreto judicial de custodia, pues lo determinante no será, necesariamente, la realidad *de jure* sino las circunstancias fácticas del caso. Así, por ejemplo, si el régimen de visitas se amplía al margen de la sentencia judicial, por acuerdo tácito entre las partes, será responsable el progenitor con quien esté el menor en un momento determinado según las circunstancias de hecho.[5] Por supuesto, esto no significa que el dictamen de custodia sea irrelevante en estos casos, pues seguramente será pertinente, aunque no concluyente, para determinar con cuál padre convivía el menor cuando produjo el daño.

De otra parte, debe tenerse presente que aunque la determinación de la "convivencia" es una cuestión de hecho, esto no implica que un padre puede liberarse de responsabilidad abandonando a su hijo. En <u>López v. Porrata Doria</u>, *supra*, expresamente advertimos que lo importante, al producirse una falta de convivencia, será examinar las causas que la motivaron, de suerte que se dilucide si su ausencia fue <u>legítima</u>.[6]

---

[5] Mónica Navarro Michel, <u>La Responsabilidad Civil de los Padres por los Hechos de sus Hijos</u>, 1998, pág. 73.

[6] Carmen López Beltrán de Heredia, <u>La Responsabilidad Civil de los Padres por los Hechos de sus Hijos</u>, 1988, pág. 75.

Ahora bien, debe quedar claro que <u>López v. Porrata Doria</u>, *supra*, no sugiere que el padre custodio siempre responderá por los daños de sus hijos menores de edad. En dicho caso reiteramos que el padre no custodio responderá cuando tenga al menor en su compañía; lo que ocurriría, por ejemplo, cuando ejerza el derecho de visita sobre el menor. La norma es pues neutral: responde el padre en cuya compañía viva el menor cuando ocurra el daño; sea el custodio o el no custodio. Ciertamente, es posible que el padre custodio responda con mayor frecuencia pues <u>de ordinario</u> tendrá al menor en su <u>compañía</u>. Sin embargo, igual resultado se produciría si el padre no custodio es quien se relaciona con mayor frecuencia con el menor. En ambos casos, sin embargo, el presupuesto de responsabilidad es la convivencia (a tenor con las circunstancias fácticas del caso) y no la custodia *de jure* a tenor con un decreto judicial.

Obviamente, la norma sentada en <u>López v. Porrata Doria</u>, *supra*, no es una sanción por relacionarse con un hijo. La misma meramente establece lo que es harto conocido: quien convive con el menor cuenta con los elementos necesarios para vigilarlo. El Artículo 1803, cónsono con esto, presume controvertiblemente que si se produce un daño es porque ha habido negligencia en la vigilancia del menor.

En fin, a tenor con los parámetros esbozados en <u>López v. Porrata Doria</u>, *supra*, en este tipo de casos procede determinar, en primer lugar, con quién convivía el menor al cometer el daño. Una vez determinada la convivencia, procede liberar al progenitor con quien no convivía el menor, (si este es el caso) y responsabilizar al otro padre a menos que éste demuestre, a tenor con el Artículo 1803, que empleó "toda la diligencia de un buen padre de familia para prevenir el daño". <u>López v. Porrata Doria</u>, *supra*.

**A la luz de esta normativa, pasemos a discutir la controversia que tenemos ante nos.**

III

De los autos se desprende que la menor <u>no</u> convivía con su padre al momento de cometer el acto dañoso. Por el contrario, se estableció que dicha menor <u>convivía con su madre</u>, la señora Cruz Sánchez. Más aún, el foro de instancia determinó que los hechos imputados ocurrieron, precisamente, en la residencia de la madre.

Por ello, no es difícil advertir que el caso de autos es uno en que sencillamente padre e hija no conviven juntos y en el cual el padre <u>no</u> tiene control alguno sobre las actuaciones de su hija. Es más, los hechos de este caso ejemplifican la razón de ser de la normativa del Artículo 1803; la "convivencia" es indispensable para la imposición de responsabilidad paterna (la cual está basada en la culpa *in vigilando*) pues el padre que no viva con su hijo no lo puede guardar.[7]

Ciertamente, resulta difícil comprender cómo un padre que no convive con su hijo, por razón de un dictamen judicial a esos efectos, puede controlar los actos que su hijo realice mientras convive con el otro progenitor; actos que precisamente se realizan en la residencia del otro padre sobre los cuales no se tiene ningún control o injerencia.

Debe advertirse que en el caso de autos la madre, la Sra. Cruz Sánchez, era quién tenía la facultad para supervisar, no sólo el comportamiento de su hija que convivía con ella, sino las actividades que se celebraran en su residencia. Imponer tal responsabilidad al padre, Sr. González Fernández, no sólo atentaría contra el claro

---

[7] **Véase, Diez-Picazo y Antonio Gullón, <u>Sistema de Derecho Civil</u>, Vol. II, 4ta ed., pág. 645 (1986).**

lenguaje del Artículo 1803 sino que sería, además, un acto fútil, equivalente a la imposición de responsabilidad absoluta, en tanto éste no tiene ninguna manera de controlar las actividades que se realizan en una residencia ajena.

El Artículo 1803 presume que se ha incurrido en culpa *in vigilando* pues, precisamente, el padre que <u>convive</u> con el hijo es quién tiene los elementos que le permiten ejercitar el deber de vigilancia. Como dictaminó el tribunal de instancia tras examinar la prueba documental ante si, el menor necesariamente debe vivir en la compañía del padre pues esto es una condición indispensable para que el padre pueda ejercer su autoridad. El caso de autos es el <u>mejor ejemplo</u> para sustentar la norma del Artículo 1803; el deber de vigilancia requiere las condiciones necesarias para regir, corregir y aconsejar al menor en tanto estas obligaciones no se pueden satisfacer a distancia y sin el control del menor. No debemos olvidar que la culpa *in vigilando* se refiere a la negligencia en el control del comportamiento de los hijos, la cual requiere, para ser efectiva, la "convivencia" como posibilidad del ejercicio del deber de vigilar. <u>López v. Porrata Doria</u>, *supra*.

En vista de lo anterior, y a la luz de la norma sentada en <u>López v. Porrata Doria</u>, *supra*, procedía liberar de responsabilidad al Sr. González Fernández y fijar la misma en el otro progenitor, la Sra. Cruz Sánchez, <u>a no ser que ésta demuestre, a tenor con el Artículo 1803, que empleó toda la diligencia de un buen padre de familia para prevenir el daño</u>.

Este no fue el curso de acción seguido por el foro apelativo pues al disponer del recurso presentado no tuvo el beneficio de nuestras expresiones en <u>López v. Porrata Doria</u>, *supra*. Por ende, a la luz de lo allí pautado, procede revocar el dictamen del tribunal apelativo

y devolver el caso al tribunal de primera instancia para que continúen los procedimientos conforme lo aquí resuelto.

Se dictará la Sentencia correspondiente.


Federico Hernández Denton
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**Verónica Baba Rosario y otros**

  **Demandantes Recurridos**


            **v.**                          **CC-2002-046    Certiorari**

**Roberto González Fernández
y otros**


  **Demandados Peticionarios**


**SENTENCIA**


San Juan, Puerto Rico, a 28 de junio de 2002.


     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Circuito de Apelaciones.


     Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Juez Asociada señora Naveira de Rodón emitió Opinión Disidente a la que se unió el Juez Presidente señor Andréu García.  El Juez Asociado señor Fuster Berlingeri disintió sin opinión escrita.


                    Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Verónica Baba Rosario y
Wanda Rosario Dávila

    Demandantes Recurridas

       v.                        CC-2002-46

Roberto González Fernández
y otros

    Demandados Peticionarios

Opinión Disidente emitida por la Juez Asociada señora NAVEIRA DE RODÓN, a la cual se une el Juez Presidente, señor ANDRÉU GARCÍA.

San Juan, Puerto Rico a 28 de junio de 2002

    Disentimos de la decisión a la cual llega la mayoría en este caso, pues la misma reitera el errado y anacrónico criterio que recientemente adoptó el Tribunal en <u>López</u> v. <u>Porrata Doria</u>, res. el 4 de abril de 2002, 2002 TSPR 39. Repite el Tribunal el erróneo razonamiento que tiene el efecto de imponerle la responsabilidad *in vigilando* por los actos negligentes del menor al padre o madre custodio, aun cuando ambos padres compartan la patria potestad sobre el menor que ha cometido el acto culposo.

Así pues, el Tribunal reitera una norma que ha convertido el hecho de la tenencia física del menor en determinado momento, lo cual puede ser un asunto meramente incidental, en un criterio de mayor peso e importancia que los deberes que tienen tanto el padre como la madre por ostentar la patria potestad sobre sus hijos. Esto no solamente ha sido un paso retrógrada en nuestro derecho de familia, sino que también es contrario a lo que reiteradamente establecieron durante años nuestros precedentes, de acuerdo a cardinales principios de política pública relacionados a la institución de la patria potestad.

I

Hemos establecido que la patria potestad comprende el conjunto de derechos y deberes más amplio que tienen los padres respecto a la persona y los bienes de sus hijos no emancipados, entre los cuales se encuentra **el deber de convivir con los hijos**, alimentarlos en su mesa, educarlos, **guiarlos** y representarlos. Véase Chévere v. Levis, res. el 3 de noviembre de 2000, 152 D.P.R. ___ (2000), 2000 T.S.P.R. 161, 2000 JTS 175; Torres, Ex parte, 118 D.P.R 469, 473 (1987). También ha sido definida como "el poder que [el ordenamiento jurídico reconoce] a los progenitores sobre los hijos menores no emancipados, para el cumplimiento de los deberes de alimentación, educación e instrucción".[8]

Así, en Soto Cabral v. E.L.A., 138 D.P.R. 298, 323 (1995), señalamos cuatro (4) características esenciales de la patria potestad: (1) es imprescriptible, porque el no uso o el abandono podrá imponer sanciones al padre pero no lo libera de sus funciones de padre con relación a los hijos; (2) intransferible, porque el padre o la madre

---

[8] J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosh, 1990, T. V., pág. 245.

no pueden voluntariamente ceder esos deberes fundamentales de la vida familiar a nadie en virtud de ninguna razón; (3) inalienable, porque a nadie se le puede traspasar por ningún concepto o motivo, ni por ningún interés; y, por último (4) irrenunciable [excepto en aquellos casos de adopción dispuestos por ley para beneficio del menor].

Dada la importancia que le da nuestro ordenamiento jurídico a la institución de la patria potestad, es en virtud de ésta que se ejerce el derecho a tomar todas las decisiones fundamentales respecto a la crianza y educación de los hijos, y cuáles serán las normas sociales, morales y religiosas bajo las que éstos crecerán.  También surge de la patria potestad el derecho de los padres a disfrutar del usufructo de los bienes de sus hijos menores de edad,[9] a consentir al matrimonio y la emancipación de éstos.

Por otra parte, la custodia consiste en la tenencia o control físico que tiene un progenitor sobre sus hijos.  No obstante, hemos establecido que "los aspectos de custodia de menores **no son en estricta lógica separables de la patria potestad**.  En realidad, la custodia es un **componente** de la patria potestad, **pues ésta impone a los padres el deber primario de tener sus hijos no emancipados en su compañía**.  Ello implica, como norma general, que aquel que ostente la patria potestad también tiene la custodia.  [Sin embargo] **su ejercicio no necesariamente significa que tiene que tenerlos en su compañía**.  La doctrina admite, ante circunstancias aconsejables y necesarias para el bienestar del menor, el alejamiento del que ostenta la patria potestad."  Torres, *Ex parte*, supra, pág. 476.  (Citas omitidas, énfasis suplido.)

Se desprende claramente de lo que hemos expuesto que los deberes y responsabilidades de los padres con respecto a sus hijos menores,

inclusive la tenencia física de éstos, no surgen del hecho de la custodia, sino del hecho de ostentar la patria potestad sobre el menor. La custodia es tan solo un ingrediente de la patria potestad, que si bien _facilita_ el control y la responsabilidad de velar por los actos del menor en un momento determinado, no determina la autoridad del padre o la madre para ejercer dicho control y asumir dichas responsabilidades, sino que la misma surge del conjunto de derechos y deberes que otorga e impone la patria potestad.

Este Tribunal ha reconocido no obstante, que cuando ocurre el divorcio, una de las áreas de mayor conflicto lo es el establecimiento de las relaciones paterno y materno filiales con los hijos menores de edad. En _Sterzinger_ v. _Ramírez_, 116 D.P.R. 762, 773 (1985), señalamos que "[C]uando el tribunal le otorga la custodia a un padre y concede derecho de visita al otro, esto automáticamente tiene un efecto real sobre las relaciones del progenitor no custodio con el menor. El padre no custodio pierde cierta autoridad real sobre los hijos, que antes compartía con el ex cónyuge, desaparece la libertad de compartir y disfrutar con ellos en cualquier momento que desee. A medida que los patrones familiares han cambiado en nuestro país y los padres comparten más el cuidado de sus hijos y las tareas en el hogar, más profundo resulta el impacto de la separación para el progenitor no custodio como para los hijos."

Precisamente por esta razón es que el ordenamiento jurídico debe ir dirigido a proteger la relación entre el padre o madre no custodio y sus hijos menores de edad, máxime cuando dicho padre o madre no custodio sigue ostentando la patria potestad sobre los menores. Si bien puede ser cierto que el padre o madre no custodio pierde hasta determinado punto contacto con el menor, esta situación no debe ser

---

[9]    _Rodríguez Mejías_ v. _E.L.A._, 122 D.P.R. 832 (1988).

óbice ni justifica que el ordenamiento releve al padre no custodio o que no tiene al menor en su compañía al momento de ocurrir el acto dañoso de responsabilidad civil por incumplimiento con su responsabilidad *in vigilando* sólo porque, según un decreto de custodia, el menor pasa la mayor parte de tiempo con el otro padre. En primer lugar, lejos de fortalecer las relación del menor con el padre o madre no custodio, este "relevo de responsabilidad" contribuye a debilitar aún mas la relación del hijo con ese padre o madre que no tiene al menor en su compañía la mayor parte del tiempo, ya que éste, al no sentirse responsable por vigilar al menor y prevenir los actos negligentes de éste, tendrá aun menos incentivos para atenderlo y guiarlo, tal como lo exige la patria potestad.

En segundo lugar, aunque la custodia compartida luego del divorcio es la situación ideal en aras de mantener ciertos elementos de unidad familiar, lo cierto es que un arreglo a estos efectos no siempre es posible, por un sinnúmero de razones, desde la tirantez de la relación entre los padres divorciados, o que el propio tribunal haya determinado que el bienestar de los menores está con uno de ambos padres, o simplemente, que el padre y la madre hayan decidido que los menores vivirán con uno u otro padre por el hecho de que el hogar de éste está más cercano al lugar donde los niños van a la escuela, o al centro de cuidado diurno al que asisten, o que el horario de trabajo del ese padre o madre es más flexible que el del otro.

Como se puede apreciar, la determinación sobre cuál de los dos padres tendrá la custodia de un menor puede obedecer a múltiples factores y circunstancias extrínsecas que no necesariamente están relacionadas con los deberes fundamentales que emanan de la patria potestad. Es en ese contexto que se debe examinar la responsabilidad

de los padres por los actos negligentes del hijo menor de edad que establece el Art. 1803 del Código Civil.

## II

La responsabilidad de los padres que surge del Art. 1803 se basa en la culpa y negligencia de éstos y no en la de los hijos. Dicha responsabilidad es de carácter primaria y no secundaria. "Esa culpa o negligencia de los padres guarda relación con su deber de vigilancia sobre los hijos menores de edad que vivan en su compañía, de imponer la debida disciplina sobre sus hijos y de suministrarles una educación y un ambiente adecuado." Cruz v. Rivera, 73 D.P.R. 682, 688 (1952); Sociedad de Gananciales, etc. v. Cruz, 78 D.P.R. 349, 359 (1955). Así pues "los padres no son garantizadores *sine qua non* de las actuaciones de sus hijos; sino que cada caso específico debe medirse por sus circunstancias especiales, y los hechos de cada caso deben ser considerados a los fines de determinar si hubo o no hubo negligencia de parte de los padres, en cuanto a si las actuaciones del hijo se deben al incumplimiento por parte del padre de su deber de vigilancia, represión, disciplina y educación." Cruz v. Rivera, supra.

Es importante destacar que en estos casos no es necesario probar la culpa o negligencia de los padres, sino que son éstos los que tienen que probar que no incurrieron en culpa o negligencia para así eximirse de responsabilidad. O sea, el Art. 1803 crea una especie de presunción de negligencia por parte de los padres, y para liberarse de su responsabilidad es necesario probar, no que el menor no incurrió en negligencia, sino que el padre o madre cumplió con su responsabilidad *in vigilando,* es decir, que fue prudente en el ejercicio de control

sobre el menor, o que actuó como un buen padre de familia para evitar la conducta negligente del hijo.

La razón de ser de este caso especial en el cual el Código presume la existencia de negligencia por parte de los padres es que éstos tienen un deber de vigilancia y control sobre los hijos. La pregunta crucial que debemos hacernos es la siguiente: ¿De dónde emana ese deber? La respuesta del ordenamiento jurídico a esta crucial interrogante es sorprendentemente sencilla, pero categórica: ese deber emana del ejercicio de la patria potestad sobre los hijos. ¿Se extingue automáticamente ese deber sólo porque uno de los padres tenga al menor en su compañía al momento de ocurrir el acto culposo? Tenemos que contestar en la negativa, sencillamente porque está más que establecido que el padre o madre que retiene la patria potestad también retiene la responsabilidad por vigilarlo y contribuir a prevenir que éste pueda causar daños con su conducta a otros. Resulta claro que la respuesta sobre a quién le corresponde la responsabilidad que impone el Art. 1803 del Código Civil cuando el padre o madre del menor no cumplen con su responsabilidad *in vigilando* no hay que buscarla en complicadas doctrinas sobre el derecho de daños y perjuicios, sino en principios básicos de nuestro ordenamiento jurídico, los cuales se fundamentan en una clara política pública de fortalecer la institución de la familia.

Así pues, entendemos que es erróneo el utilizar el criterio de quién ostenta la custodia o tenencia física del menor en un momento dado como agente determinante para imponer responsabilidad bajo el Art. 1803. La responsabilidad de los padres por los hijos menores que viven en su compañía es una que emana de los deberes inherentes a la patria potestad, no a la custodia, que no es sino un atributo o manifestación de la primera.

Lo anterior, sin embargo, no significa que el padre o madre no custodio o que no tenía al menor consigo en el momento del daño no tendrá la oportunidad de establecer ante el foro correspondiente que éste efectivamente cumplió con su deber *in vigilando*, o que, en su caso en particular, debido a que no ostenta la custodia del menor o no lo tenía consigo, dicha responsabilidad *in vigilando* no debe exigírsele, aun cuando ostente la patria potestad. Lógicamente, el padre o madre que tiene al menor en su compañía en un momento determinado tiene más control sobre los actos de éste que el padre o madre que no está presente en ese momento. Este es un factor que el tribunal puede y debe tomar en consideración al decidir sobre el incumplimiento con el deber de vigilancia del padre o madre. Lo que no debe ocurrir es que el hecho incidental de la tenencia física del menor sea un eximente automático de responsabilidad para el otro padre o madre, obviando el hecho de que éste sigue ostentando la patria potestad sobre dicho menor, la cual, según hemos establecido **se ejerce integralmente y no como un conjunto de derechos y deberes individuales e independientes**. Soto Cabral v. E.L.A, supra, pág. 323. Así pues, no se puede ejercer la patria potestad para abrogarse un derecho de ingerencia en las decisiones concernientes a la crianza, educación, administración, y el derecho al disfrute de los bienes de los hijos, y no asumir la correlativa responsabilidad que dichas facultades conllevan.

Nos preocupa además el hecho de que, en términos prácticos, el imponer responsabilidad por negligencia por el hecho físico de la custodia o tenencia del menor conllevará grandes problemas para los litigantes en el futuro. Nos surgen preguntas tales como: ¿Qué pasará cuando por algún arreglo entre los padres, el menor se encuentre en determinado momento con uno de éstos, cuando según los arreglos consignados en el Tribunal se supone que estuviese con el otro padre?

¿Qué pasará cuando sean los abuelos, quienes muchas veces cuidan de sus nietos menores de edad aun cuando la custodia oficial le corresponde al hijo o hija de éstos, <u>los que tengan al menor en su compañía</u> al momento de ocurrir el acto culposo?  ¿A quién se le impondrá la responsabilidad cuando los padres aún no estén divorciados, sino separados, y no exista un acuerdo decretado por el tribunal sobre la custodia del menor, aunque como cuestión de realidad dicho menor esté viviendo con uno de los dos padres?  ¿Cuál será el criterio para imponer bajo el Art. 1803 en casos en que el menor no esté bajo la custodia física de ninguno de los dos padres?

Podríamos seguir enumerando preguntas que no encontrarán una respuesta lógica en el ordenamiento, de empeñarse el Tribunal en seguir la irrazonable norma que ha creado.  El hecho de la tenencia física del menor no puede ser el criterio para imponer responsabilidad al padre o madre bajo el Art. 1803 del Código Civil.  La custodia sobre un menor es un arreglo que tiene que hacer el Tribunal en los casos de divorcio por el sencillo hecho de que el niño o niña no puede estar en dos lugares al mismo tiempo, y ésa es una realidad física no debe afectar más de lo estrictamente necesario la responsabilidad del padre y la madre cuando ambos ostentan la patria potestad.  Consideramos que es urgente que el Tribunal examine los efectos reales de la norma que insiste en sostener, ya que, en lugar de fomentar que luego del divorcio ambos padres continúen involucrados en la vida de sus hijos, estamos fomentando la mayor ruptura del núcleo familiar, pilar de la sociedad puertorriqueña.

III

**Por todos estos fundamentos, disentimos del criterio mayoritario.  En consecuencia, confirmaríamos el dictamen del**

**Tribunal de Circuito de Apelaciones, y devolveríamos el caso para la continuación de los procedimientos de conformidad.**


Miriam Naveira de Rodón
Juez Asociada